SHAKED LAW GROUP, P.C.
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

DENETTE J. LIGON, Individually and as the
representative of a class of similarly situated persons,

                                 Case No. 23-cv-5093

                  Plaintiff,

        - against -

WHATNOT INC.,                         **CLASS ACTION COMPLAINT**

                  Defendant.
-----------------------------------------------------------X

       Plaintiff, Denette J. Ligon (hereinafter "Plaintiff"), on behalf of herself and all others

similarly situated, by and through her undersigned attorney, hereby files this Class Action Complaint

against Defendant, Whatnot, Inc. (hereinafter "Whatnot" or "Defendant"), and states as follows:

### INTRODUCTION

      1.      This class action seeks to put an end to systemic civil rights violations committed by

Defendant against deaf and hard-of-hearing individuals in New York State and across the United

States.  Defendant denies deaf and hard-of-hearing individuals throughout the United States equal

access to the goods and services that it provides to non-disabled individuals, through the mobile

application known as ***Whatnot: Live Video Shopping*** (hereinafter the "App") and related domains

owned by Defendant. Defendant provides a wide array of goods and services to the public through its

App. However, the App contains access barriers that make it difficult for deaf and hard-of-hearing

individuals to use the App. In fact, the access barriers make it impossible for deaf and hard-of-

hearing users to comprehend the audio portion of videos that are posted on the App. Defendant thus

excludes the deaf and hard of hearing from the full and equal participation in the growing Internet

economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive technology is becoming an increasingly prominent part of everyday life, allowing deaf and hard-of-hearing people to fully and independently access a variety of services, including online videos.

2.      Plaintiff, who currently lives in New York City, is a deaf individual. She brings this civil rights class action lawsuit against Defendant for failing to design, construct, and/or own or operate a App that is fully accessible to, and independently usable by, deaf and hard-of-hearing people.

3.      Approximately 36 million people in the United States are deaf or hard of hearing. Many of these individuals require captioning to meaningfully comprehend the audio portion of video content. Just as buildings without ramps bar people who use wheelchairs, video content without captions excludes deaf and hard-of-hearing individuals. Closed captioning is a viewer-activated system that displays text on, for instance, online videos, television programming, or DVD movies. This is different from open captioning or subtitles, which are burned into the video file and automatically displayed for everyone to see, such as subtitles in foreign language movies. With closed captioning, deaf and hard-of-hearing individuals have the opportunity to watch videos by reading the captioned text.

4.      Deaf and hard-of-hearing people watch videos and streaming content just as aurally capable people do. The lack of closed captioning means that deaf and hard-of-hearing people are excluded from the rapidly expanding Internet media industry and from independently accessing videos and streaming content posted on the App.

5.      Despite readily available accessible technology, such as the technology in use at other heavily trafficked Apps, which makes use of closed captioning for hard-of-hearing individuals, Defendant has chosen to post videos and streaming content without closed captioning that are inaccessible to deaf and hard-of-hearing individuals. Without closed

captioning, deaf and hard-of-hearing people cannot comprehend the audio portion of the videos and streaming content on the App.

6. By failing to make the App accessible to deaf and hard-of-hearing persons, Defendant is violating basic equal access requirements under both state and federal law.

7. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by mobile applications and other public accommodations that are inaccessible to deaf and hard-of-hearing individuals. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

8. Plaintiff is interested in browsing, learning about, and purchasing luxury bags and accessories, jewelry, and clothing products on Defendant's App – all of which are sold at discounted pricing or by auction - by watching, reading the content of, and participating in live shopping events which offer expert reviews, advise, discounts, and product descriptions from sellers, hosts, professionals and company representatives about specific products which Plaintiff wants to purchase.   Plaintiff visited the App on numerous occasions and browsed and intended to watch the informational and instructional sales live streamed videos including "Lacy and Adam's Luxury Bags and Accessories," a luxury handbag streaming video, "Discount Diva Makeup and Skincare," a seller of beauty products, and "Sammy's Closet Luxury Bags and Accessories," a seller of luxury handbags and accessories, all of which offer products that Plaintiff was interested in learning about and purchasing, amongst the many product and informational live videos and streaming content that she attempted to watch on the App. However, unless Defendant remedies the numerous access barriers on the App, Plaintiff and

Class members will continue to be unable to independently watch videos and streaming content on the App.

9.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law, to include monitoring of such measures, and to update and remove accessibility barriers on the App so that Plaintiff and the proposed Class and Subclass individuals who are deaf and hard of hearing will be able to independently and privately view videos posted on the App. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA"); and

11.     28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d).

12.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq.*) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a).

14.     Venue is proper in the Southern District of New York because a substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in the Southern District

of New York. Specifically, Plaintiff attempted to browse and view live videos and streaming content on the App in New York County. Defendant has been and is committing the acts alleged herein in the Southern District of New York and has been and is violating the rights of consumers in the Southern District of New York.

15.     Several judges support the decision to place the venue in the district in which Plaintiff tried and failed to access the App. In *Access Now, Inc. v. Otter Products, LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the App may have been created and operated outside of the district, the attempts to access the App in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods.*, 280 F. Supp. 3d at 294. This satisfies Due Process because "the harm—the barred access to the App—occurred here." *Otter Prods.*, 280 F. Supp. 3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc.*, No. 17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318, at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement. Similarly, in *Plixer International, Inc. v. Scrutinizer GmbH*, No. 2:16-cv-578-DBH, 2017 U.S. Dist. LEXIS 172355 (D. Me. Oct. 18, 2017), Judge D. Brock Hornby asserted that the "defendant can be said to have wanted, if not targeted, business outside its home country" because it had "accepted recurrent business from the United States in a substantial amount, and . . . it did so knowingly." *Plixer Int'l*, No. 2:16-cv-578-DBH, 2017 U.S. Dist. LEXIS 172355, at *13-15.

## **PARTIES**

16.     Plaintiff is and has been at all times material hereto a resident of New York County, State of New York.

17.     Plaintiff is legally deaf and a member of a protected class under the ADA, 42
U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR § 36.101 *et
seq.*, the New York State Human Rights Law, and the New York City Human Rights Law.
Plaintiff cannot access the audio portion of a video without the assistance of closed captioning.
Plaintiff has been denied the full enjoyment of the facilities, goods, and services of the App, as a
result of its accessibility barriers. Most recently on June 14, 2023, Plaintiff attempted to watch
the informational, promotional, and instructional sales live videos and streaming content about
luxury bags and accessories, jewelry, and clothing products which she was interested in learning
about and purchasing on Defendant's App, amongst many other videos and streaming content
which appear on the App. The inaccessibility of the App has deterred her and Class members
from watching and learning the content of videos and streaming content on the App.

18.     Defendant, Whatnot Inc., is a Delaware Foreign Business Corporation doing
business in New York with a principal place of business at 578 Washington Blvd., Marina Del
Rey, CA 90292.

19.     The failure of Defendant to provide equal access to deaf and hard-of-hearing
individuals violates the mandate of the ADA to provide "full and equal enjoyment" of a public
accommodation's goods, services, facilities, and privileges. Places of public accommodation
include, "place[s] of exhibition and entertainment," "places[s] of recreation," and "service
establishments." 28 C.F.R. § 36.201 (a); 42 U.S.C. §12181 (7). Because the App is a "place of
public accommodation," denial of equal access to the videos available to hearing individuals
violates the ADA. *See Romero v. 88 Acres Foods, Inc.*, 20-cv-9215 (KMW), 2022 U.S. Dist.
LEXIS 9040, at *7 (S.D.N.Y. Jan. 18, 2022). Remedying that violation is critical to the ADA's
goal of providing people with disabilities the same access that others take for granted.
Accordingly, Plaintiff seeks injunctive and declaratory relief to ensure that deaf and hard-of-
hearing individuals have equal access to the App.

20.     Plaintiff seeks full and equal access to the goods and services provided by Defendant through the App.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally deaf and hard-of-hearing individuals in the United States who have attempted to access the App and as a result have been denied access to the enjoyment of goods and services offered by the App during the relevant statutory period."

22.     Plaintiff seeks certification of the following New York subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally deaf and hard-of-hearing individuals in New York State who have attempted to access the App and as a result have been denied access to the enjoyment of goods and services offered by the App, during the relevant statutory period."

23.     There are hundreds of thousands of deaf or hard-of-hearing individuals in New York State. There are approximately 36 million people in the United States who are deaf or hard of hearing. Thus, the persons in the Class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

24.     This case arises out of Defendant's policy and practice of maintaining an inaccessible App denying deaf and hard-of-hearing persons access to the goods and services of the App. Due to Defendant's policy and practice of failing to remove access barriers, deaf and hard-of-hearing persons have been and are being denied full and equal access to independently browse and watch videos on the App.

25. There are common questions of law and fact common to the class, including without limitation, the following:

a. Whether the App is a "public accommodation" under the ADA;

b. Whether the App is a "place or provider of public accommodation" under the laws of New York;

c. Whether Defendant through the App denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with hearing disabilities in violation of the ADA; and

d. Whether Defendant through the App denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with hearing disabilities in violation of the laws of New York.

26.     The claims of the named Plaintiff are typical of those of the Class. The Class, similarly to the Plaintiff, are deaf or hard of hearing, and claim that Defendant has violated the ADA, and/or the laws of New York by failing to update or remove access barriers on the App, so it can be independently accessible to the Class of people who are legally deaf.

27.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the Class. Class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

28. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

29.     Judicial efficiency will be served by maintenance of this lawsuit as a class action in that it will avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with hearing disabilities throughout the United States.

30.     References to Plaintiff shall be deemed to include the named Plaintiff and each member of the Class, unless otherwise indicated.

## FACTUAL ALLEGATIONS

31.     Defendant operates the App, which is an online information and sales App providing a social shopping platform designed to blend the power of social media with the buying appeal of e-commerce. The company's application provides a social platform that encourages interaction among users to learn about and determine which products to buy, enabling shoppers to receive the desired peer validation before buying as well as instructions and tips from sellers, hosts, professionals and company executives. The App connects shoppers with the most coveted, discounted designer items which can be securely purchased through a "but it now" option or through live auction. Defendant offers thousands of live shows every day. Defendant sells a wide range of products including beauty products, clothing, bags and accessories, jewelry, and a wide array of other products on its App. Millions of people across the United States visit the App and view the videos and streaming content on the App.

32.     The App is a service and benefit offered by Defendant throughout the United States, including New York State. The App is owned, controlled and/or operated by Defendant.

33.     Livestream shopping allows retailers and sellers to digitally broadcast their products via video and connect directly with online consumers. Live shopping is booming with live streaming e-commerce expected to grow to $245 billion by 2026 and is growing by over 70% each year. Yet, many live streaming companies, including Defendant, refuse to allow the deaf and hearing-impaired from participating in this growing e-commerce way of selling.

34.     The App allows users to participate in livestream selling and educational events so that they can learn about the wide range of products sold on the App, learn how to use the products, learn about discounts and promotions, view testimonials, and watch live videos and streaming content about the products which are offered for sale, get instructional demonstrations, have the ability to chat with the host and get on-demand answers to questions, as well as immediately purchase the products or make bids through a live auction.   Defendant's videos and streaming content are available with the click of a mouse and are played through the Internet on computers, cell phones, and other electronic devices. The videos can be viewed live or at a later date – at the users' discretion.

35.     This case arises out of Defendant's policy and practice of denying the deaf and hard of hearing full and equal access to the App, including the goods and services offered by Defendant through the App. Due to Defendant's failure and refusal to remove access barriers to the App, deaf and hard-of-hearing individuals have been and are being denied equal access to the App, as well as to the numerous goods, services and benefits offered to the public through the App.

36.     Defendant denies the deaf and hard of hearing access to goods, services, and information made available through the App by preventing them from freely enjoying, interpreting, and understanding the content on the App.

37.     The Internet has become a significant source of information for conducting business and for doing everyday activities such as reading news, watching videos, etc., for deaf and hard-of-hearing persons.

38.     The deaf and hard of hearing access videos through closed captioning, which is a transcription or translation of the audio portion of a video as it occurs, sometimes including description of non-speech elements. Except for a deaf or hard-of-hearing person whose residual hearing is still sufficient to apprehend the audio portion of the video, closed captioning provides

the only method by which a deaf or hard-of-hearing person can independently access the video.
Unless mobile applications are designed to allow for use in this manner, deaf and hard-of-
hearing persons are unable to fully access the service provided through the videos on the App.

39.     There are well-established guidelines for making Apps accessible to disabled
people. These guidelines have been in place for several years and have been followed
successfully by other large business entities in making their mobile applications accessible. The
Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the
leading standards organization of the Web, has developed guidelines for mobile application
accessibility, called the Web Content Accessibility Guidelines ("WCAG"). The federal
government has also promulgated App accessibility standards under Section 508 of the
Rehabilitation Act. These guidelines are readily available via the Internet, so that a business
designing a mobile application can easily access them. These guidelines recommend several
basic components for making Apps accessible, including but not limited to adding closed
captioning to video content.

40.     The App contains access barriers that prevent free and full use by Plaintiff and
other deaf or hard-of-hearing persons, including but not limited to the lack of closed captioning.
This barrier is in violation of WCAG 2.1 Guideline 1.2.2, which mandates that video content
contain captioning.

41. The App contains important videos and streaming content that lack captioning. The
videos and streaming content on the App contain important and useful information about the
products sold on the App, including learning about the benefits of using or having the products,
their unique advantage, learning product reviews, getting instant discounts, and instruction on
how to properly and safely use the products.   In addition, the live videos allow the user to chat
directly with the host and get answers to questions and concerns and to bid in auctions. The
videos and streaming content on the App do not contain closed captioning or transcriptions. The

lack of captioning or transcriptions prevents Plaintiff and other deaf or hard-of-hearing people from understanding the content of the videos, thus preventing them from learning about Defendant's products and how to use them safely, preventing them from learning about price discounts, preventing them from making educated decisions about whether to purchase the products, and preventing them from live chatting with the host.

42.     Due to the App's inaccessibility, Plaintiff and other deaf or hard-of-hearing individuals must in turn spend time, energy, and/or money to apprehend the audio portion of the videos offered by Defendant. Some deaf and hard-of-hearing individuals may require an interpreter to apprehend the audio portion of the videos and streaming content or require assistance from their friends or family. By contrast, if the App was accessible, a deaf or hard-of-hearing person could independently watch the videos and enjoy the services provided by Defendant as hearing individuals can and do.

43.     The App thus contains access barriers which deny full and equal access to Plaintiff, who would otherwise use the App and who would otherwise be able to fully and equally enjoy the benefits and services of the App in New York State.

44.     Plaintiff visited the App on numerous occasions and browsed and intended to watch the informational and instructional live sales videos and live streams including the live streaming sales videos shown on June 14, 2023 "Lacy and Adam Luxury Bags and Accessories," a luxury handbag and accessories streaming video which is narrated by two people who describe each and every handbag which is offered for sale, offer verbal discounts, and engage with live viewers – Plaintiff was interested in learning about and purchasing a Louis Vuitton bag at a discounted price; "Discount Diva Makeup and Skincare," a seller of makeup and skincare products narrated by the seller who describes each and every item which is offered for sale, offers verbal discounts, and engages with live viewers – Plaintiff was interested in purchasing by auction various hair treatment and lotions; "Sammy's Closet Luxury Bags and Accessories," a

seller of luxury handbags and accessories, narrated by the seller who describes each and every item which is offered for sale, offers verbal discounts, and engages with live viewers – Plaintiff was interested in learning about and purchasing a luxury wallet, amongst other videos and streaming content on the App. Plaintiff attempted to view and understand the content of the videos, including attempting to watch other live videos and streaming content for many months, most recently on June 12, 2023 and June 14, 2023, but was unable to do so independently because of the lack of closed captioning or transcription on the App, causing it to be inaccessible and not independently usable by deaf and hard-of-hearing individuals. As a result of the inaccessibility, Plaintiff was unable to learn about the products that she wanted to purchase, including whether they are new or used and the condition, whether there are discounts being offered, how and where to wear the products, as well as being able to engage the sellers.

      45.     Moreover, if Defendant removes the access barriers that currently exist on the App, Plaintiff will definitely visit the App in the future to watch additional live streamed videos about the various beauty products, bags and accessories, jewelry, and clothing products that are available for purchase on the App and make purchases. As previously stated, live streamed e-commerce is growing at a rapid pace and Plaintiff is very well aware of the trend, as she follows several influencers and is active in social media. Plaintiff was introduced to Defendant's App earlier this year by a friend who is familiar with the App and who has made purchases on the App. Plaintiff became interested in the App and in watching and participating in live streaming events which are shown on a daily basis. Plaintiff likes the fact that by watching the live stream videos, she can see and hear directly from the seller, learn how to use products correctly and safely, get introduced to new products, learn about discounts and promotions, learn about the condition of the products, and even interact with the host. Unfortunately, Plaintiff has been deterred from watching the videos and from learning about the products available for sale due to the lack of closed-captions and transcriptions. There are thousands of products that are sold on

the App and new ones are added all of the time. If the App was accessible to the deaf, Plaintiff

will be able to visit the App and watch and learn from many of the videos and streaming content

that accompany every product and make purchases. Defendant has watched live streaming

videos on other (accessible) Apps in the past since she regularly purchases such products.

However, since Defendant's videos and streaming content sell the most coveted new, discounted,

pre-loved, and pre-owned designer items and offer endless inspiration, Plaintiff would continue

to watch videos and make purchases on Defendant's App if it was accessible. There are

thousands of new live streaming videos each and every day on Defendant's App and Defendant

is eager to view and listen to them in order to find products which suit her and which she may be

interested in purchasing. Unlike a brick-and-mortar facility, a App is instantly accessible at any

moment, and, thus, an inability to listen to videos can only be attributed to access barriers

(whereas for brick-and-mortal locations it can be attributed to proximity, travel time, etc.). *See*

*Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar.

22, 2022) (citing *Quezada v U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS

234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA App accessibility

complaint properly allege whether plaintiff lives in "close proximity" to a specific location

makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a

App. Likewise, factual considerations of an intent to return regarding a physical location, such as

how often the plaintiff walks by the location, or how often they enter the facility, are not

applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS

43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to view and

understand videos on the App during April, May, and June 2023 without success and will

definitely view the videos for existing and new products on the App in the future if they become

accessible to the deaf.

46.     As described above, Plaintiff has actual knowledge of the fact that the App contains access barriers causing the App to be inaccessible, and not independently usable by, deaf and hard-of-hearing individuals.

47.     These access barriers have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits, and services of Defendant and the App.

48.     Defendant engages in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructing and maintaining an App that is inaccessible to deaf and hard-of-hearing Class members with knowledge of the discrimination; and/or

(b) constructing and maintaining an App that is not sufficiently intuitive and/or obviously inaccessible to deaf and hard-of-hearing Class members; and/or

(c) failing to take actions to correct access barriers in the face of substantial harm and discrimination to deaf and hard-of-hearing Class members.

49. Defendant utilizes standards, criteria, and methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

**FIRST CAUSE OF ACTION**

(Violation of 42 U.S.C. § 12181, *et seq.* — Title III of the Americans with Disabilities Act)
(on behalf of Plaintiff and the Class)

50.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

51.     Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a)*,* provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or

criteria or methods of administration that have the effect of discriminating on the basis of

disability." 42 U.S.C. § 12181(b)(2)(D)(I).

52.     Defendant operates a place of public accommodation as defined by Title III of

ADA, 42 U.S.C. § 12181(7), a "place of education," a "place of exhibition or entertainment," a

"place of recreation," and "service establishments."

53.     Defendant has failed to make its videos accessible to individuals who are deaf or

hard of hearing by failing to provide closed captioning for videos displayed on the App.

54.     Discrimination under Title III includes the denial of an opportunity for the person

who is deaf or hard of hearing to participate in programs or services or providing a service that is

not as effective as what is provided to others. 42 U.S.C. § 12182(b)(1)(A)(I-III).

55.     Discrimination specifically includes the failure to provide "effective

communication" to deaf and hard-of-hearing individuals through auxiliary aids and services,

such as captioning, pursuant to 42 U.S.C. § 12182(b)(1)(A)(III); 28 C.F.R. § 36.303(C).

56.     Discrimination also includes the failure to maintain accessible features of

facilities and equipment that are required to be readily accessible to and usable by persons with

disabilities. 28 C.F.R. §36.211.

57.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities the

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages,

or accommodations of an entity.

58.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities and

the opportunity to participate in or benefit from the goods, services, facilities, privileges,

advantages, or accommodations, which is equal to the opportunities afforded to other

individuals.

59.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

60.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

61.     The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Individuals who are deaf and hard of hearing have been denied full and equal access to the App have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

62.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

63.     Modifying its policies, practices, and services by providing closed captions to make its videos accessible to deaf and hard-of-hearing individuals would not fundamentally alter the nature of Defendant's business, nor would it pose an undue burden to this flourishing company.

64.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the App in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* and/or its implementing regulations.

65.     Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed Class and Subclass will continue to suffer irreparable harm.

66.      The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

67.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

68.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>**SECOND CAUSE OF ACTION**</u>

(Violation of New York State Human Rights Law, N.Y. Exec. Law,
Article 15 (Executive Law § 292 *et seq.*) (on behalf of Plaintiff and New York subclass)

69.     Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

70.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

71.     Defendant operates a place of public accommodation as defined by N.Y. Exec. Law § 292(9).

72.     Defendant is subject to New York Human Rights Law because it owns and operates the App. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

73.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the App, causing the videos displayed on the App to be completely inaccessible to the deaf and hard of hearing. This inaccessibility denies deaf and hard-of-hearing patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

74.     Specifically, under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

75.     In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

76.     Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exc. Law § 296(2) in that Defendant has:

(a) constructed and maintained an App that is inaccessible to deaf and hard-of-hearing Class members with knowledge of the discrimination; and/or

(b) constructed and maintained an App that is not sufficiently intuitive and/or obvious that is inaccessible to deaf and hard-of-hearing Class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to deaf and hard-of-hearing Class members.

77.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

78.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the App under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Subclass will continue to suffer irreparable harm.

79.     The actions of Defendant were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

80.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exc. Law § 297(4)(c) *et seq.* for each and every offense.

81.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

82.     Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION

(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq.*) (on behalf of Plaintiff and New York subclass)

83.     Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

84.     Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

85.     N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . . "

86.     N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

87.     The App is a public accommodations within the definition of N.Y. Civil Rights Law § 40-c(2).

88.     Defendant is subject to New York Civil Rights Law because it owns and operates the App. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

89.     Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to the App, causing videos on the App to be completely inaccessible to the deaf and hard of hearing. This inaccessibility denies deaf and hard-of-hearing patrons full and equal access to the goods and services that Defendant makes available to the non-disabled public.

90.     In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and

every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . . ”

91.     Specifically, under N.Y. Civil Rights Law § 40-d, “any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . . . ”

92.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

93.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

94.     Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.* for each and every offense.

## FOURTH CAUSE OF ACTION

(Violation of New York City Human Rights Law, N.Y.C. Administrative Code § 8-102, *et seq.*)
(on behalf of Plaintiff and New York subclass)

95.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

96.     N.Y.C. Administrative Code § 8-107(4)(a) provides that “It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public

accommodation . . . [b]ecause of any person's . . . disability . . . directly or indirectly . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

97.     The App is a public accommodation within the definition of N.Y.C. Administrative Code § 8-102.

98.     Defendant is subject to City Law because it owns and operates the App. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102.

99.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the App, causing the App and the services integrated with the App to be completely inaccessible to the deaf. This inaccessibility denies deaf patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . it is an unlawful discriminatory practice for any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

100.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8107(15)(a) in that Defendant has: (a) constructed and maintained an App that is inaccessible to deaf and hard-of-hearing Class members with knowledge of the discrimination; and/or (b) constructed and maintained an App that is not sufficiently intuitive and/or obvious that is inaccessible to deaf and hard-of-hearing Class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to deaf and hard-of-hearing Class members.

101.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

101.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the App under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Subclass will continue to suffer irreparable harm.

103.    The actions of Defendant were and are in violation of City Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

104.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

105.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

106.    Pursuant to N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION

(Declaratory Relief) (on behalf of Plaintiff and the Class)

107.    Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

108.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the App contains access barriers denying deaf and hard-of-hearing individuals the full and equal access to the

goods and services of the App, which Defendant owns, operates, and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the deaf.

109.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests relief as follows:

a)    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

b)    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the App fully compliant with the requirements set forth in the ADA, and its implementing regulations, so that the App is readily accessible to and usable by deaf and hard-of-hearing individuals;

c)    A declaration that Defendant owns, maintains, and/or operates the App in a manner which discriminates against the deaf and hard of hearing, and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

d)    An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e)    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed Subclass for violations of their civil rights under New York State Human Rights Law and City Law;

f)        Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of

suit as provided by state and federal law;

g)        For pre- and post-judgment interest to the extent permitted by law; and

h)        For such other and further relief which this court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the Complaint.

Dated: Scarsdale, New York
      June 15, 2023

                          SHAKED LAW GROUP, P.C.
                          Attorneys for Plaintiff

                        By:*/s/Dan Shaked*_____
                            Dan Shaked, Esq.
                            14 Harwood Court, Suite 415
                            Scarsdale, NY 10583
                            Tel. (917) 373-9128
                            e-mail: ShakedLawGroup@Gmail.com